No. 7470.

W. T. HOUSTON ET AL. VS. A. JUMEL, AUDITOR, AND E. A. BURKE, TREASURER.

The Constitution of the State is as obligatory upon the Legislature as upon the other departments of the government, and therefore when a legislative statute that makes appropriations of the public revenues is counter to the Constitution, it is as much the duty of the courts to declare it void as in any other kind of law.

But where the Constitution gives the Legislature a discretion, the courts will not undertake to control the exercise of it.

Where the revenues are sufficient to meet the appropriations on the face of the statutes, courts cannot undertake to forbid the payment of any appropriations, on the assumption that the actual revenues will be diminished by failure to realize all of them through the collection of taxes, although the probabilities may be that there will be a diminution that will reduce the revenues below the appropriations.

The constitutional declaration of nullity of appropriations that are in excess of revenues does not attach because the revenues that are collected in any given year are less than the appropriations of that year, but only when the revenues provided for a given year are below the appropriations for that year.

APPEAL from the Fifth District Court of New Orleans.   ROGERS, J.

*Blanc* and *Rozier* for Plaintiffs Appellants.   The Attorney-General and *Miller* for Defendants.

Houston *vs.* Jumel and Burke.

SPENCER, J.   Plaintiffs, who are judges of District Courts in the Parish of Orleans, allege that their salaries are fixed and determined by the Constitution.   That their salaries are payable out of the general fund tax, and cannot either directly or indirectly be diminished by the Legislature.   That the Legislature has made appropriations for the year 1879, largely in excess of the revenues to be derived from the taxes and licenses of said year.   That under the Amendments of 1874 to the Constitution, said appropriations so far as they exceed the revenues are void.   That the Auditor will issue, and the Treasurer will pay warrants for said void and unconstitutional appropriations, thereby, so exhausting, or at least diminishing the general fund as to defeat, in whole or part, the payment of their salaries, which they aver are by law and the Constitution payable in preference to all appropriations other than those for the salaries of constitutional officers.

They pray that the Auditor and Treasurer be injoined, the former from issuing, and the later from paying any warrants on the general fund of 1879, except such as may be in favour of constitutional officers, and that said appropriations so in excess of revenue, be ascertained and decreed void, and their payment perpetually injoined,

There were two interventions, one by Brigadier-General Behan, on behalf of the militia and one by the Louisiana Institution for the Deaf and Dumb.   These intervenors oppose the plaintiffs.   The defendants filed an answer generally denying plaintiffs allegations and averring that the appropriations did not exceed the revenues.

They also filed exceptions to the right of plaintiffs, to proceed in this wise, claiming that the question raised was legislative and not judicial.   The judgment below dismissed plaintiffs' suit and dissolved their injunction and they have appealed.

The Constitution of the State is just as obligatory upon the Legislature, as upon the other departments of the government, and where courts are forced to the alternative of obeying the one or the other in case of conflict, they cannot hesitate in their choice.   Where an act of the Legislature is clearly and manifestly in violation of the Constitution, whether it be in the exercise of its taxing or other powers, it is the bounden duty of the judiciary to declare such acts where they are and can be properly brought in question before it, null and void.

It is equally evident that where the Constitution gives the legislative department a discretion, the judiciary cannot undertake to control the Legislature in the exercise thereof. To do so would be usurpation of legislative power by the courts.

In the case before us, it is shewn that the general
fund tax of 1879, is assessed at $2^1/2$ mills on $177,-
000,000 of property and amounts therefore to　.　.　$442,500 00
To which add the estimated receipts from licenses, made
by Auditor and Treasurer, say .　.　.　.　.　.　.　414,800 00

We have a total of .　.　.　.　.　.　.　·.　.　.　.　.　$857,300 00

It is agreed on all hands that the total appropriations which will be payable out of this general fund, will not exceed $725,000.00.

But it is contended and conceded, that there will, in the nature of things, be more or less delinquency in the payment of these taxes, plaintiff charging that said delinquency will amount to $33^1/3$ per cent, defendants contending that it will be much less.

We hold that that question is one wholly abandoned to the discretion and judgment of the Legislature. In the nature of things, it is impossible for this court to say in advance, that the State will never realize from these taxes (which on their face are ample), any amount sufficient to pay the appropriations against them. It may be true that the probabilities are against its doing so, during the current year, but it must be borne in mind that the nullity declared in the Constitutional Amendment does not attach simply because the revenues collected in any one year are less than the appropriations of that year, but only when the revenues imposed that year be they collected in that year or afterwards, are below the appropriations. Otherwise, any great calamity delaying or diminishing the yearly collection of taxes, such as a general overflow, destroying the crops, or an epidemic preventing their harvesting, might have the effect of nullifying appropriations, which upon the legislative estimates, were clearly within the taxes imposed for revenue. The constitutionality of laws cannot be made to depend upon such casualties, nor upon the willingness or unwillingness, the promptitude or want of promptitude of the people in responding to the demands and exactions of the law-making power. This would make the constitutionality of a law

depend upon the alacrity with which the people obeyed it and upon the ever varying accidents of life.

The facts of this case, do not therefore present the case of legislative appropriations exceeding the revenues, and we are therefore not called upon to decide the grave question argued before us, touching the limits of the legislative, executive and judicial powers respectively. Nor are we called upon to decide which class of appropriations would be first affected by the nullity resulting from such excess, since we are bound to presume that they will all be paid, and that in exercising its judgment and discretion as to probable delinquency, the Legislature has not erred.

In fact, we have no right to presume there will be any delinquency. At all events we cannot revise the judgment of the Legislature on that point.

*Judgment affirmed.*